RECEIVED
FEB 10 2025
CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| Bruce A. Lundeen | Plaintiff | |
| Vs | | **Answer to Defendants Motion to Dismiss With Prejudice** |
| City of Minneapolis | Defendant | **Case No.: 0:24-cv-04360 JRT/DTS** |

1. The following experience compelled me, the Plaintiff, to file the complaint:

   While in great pain from sciatica, a young man was instructed to enter my Methodist Hospital Emergency Ward with the pretense of assuming the role of a hospital caregiver. The young man's employer and supervisors are unknown. Rather than legitimate therapy, the young man was provided a syringe and serum. Without any explanation, he entered my room and injected the serum into my left arm.

   About two weeks later, I had kidney stones. About a month after that, I became aware of discomfort in the vicinity of my prostrate.

   I had hoped the harassment, intimidation, gas-lighting, and other forms of nonjudicial punishment would diminish as the well-circulated rumor and innuendo that I am a pedophile died off. They went yet one better.

2. I have cared for my body and health if I have done nothing else well or right in my life. I drink enough fluids every day specifically to avoid dehydration and kidney stones.

   An act of intent to commit bodily harm to a suffering and supine patient is reprehensible and draconian.

3. The plaintiff's claim is refined and printed here:

   With duplicitous intent, a Methodist Hospital Emergency Wardroom was entered, and a patient was assaulted with an injection not documented in



SCANNED
FEB 10 2025
U.S. DISTRICT COURT MPLS

hospital discharge records. The serum injected caused other, more serious injuries than the patient went to the hospital for.

4. As for the defendants, whoever they are, the "act speaks for itself". Res ipsa lequiter.

5. I claim that the defendant and any defendant added to the case have "exclusive control" of situations I have been subjected to.

6. The city should recognize the importance of Precinct management. We hope that executive leadership does not instruct subordinates to do deeds like this. This seems to me to be leadership misconduct that could take place on direct supervisory levels.

7. The Minneapolis City Attorney has said it is not Minneapolis Police Officers who did this to me. The City Attorney may not currently have sufficient information to support or deny my claims and should say so.

8. I see the only other alternative of who might have done this being U.S. Marshal Service Deputies.

9. In the Methodist Hospital Emergency Ward, Dr. Elizabeth Greenberg, a "Doctor of Osteopathy", failed to recognize sciatica and or was deliberately disinterested. Her diagnosis, on the same hospital documentation that failed to report the illicit injection, describes my ailment as "leg pain," "numbness between your legs, or other concerns."

   My impression is that osteopathy is a system of medical practice focused on ailments like sciatica. I believe this condition is related to inflammation and can be addressed by changes in diet – such as a good "Doctor of Osteopathy" would encourage.

10. I suspect the Mayo Clinic narrowly avoided committing an evil act only because I suspected that the person I met who was introduced as Dr. Gettman was or was not Dr. Gettman. The Mayo Clinic Office of Patient Experience has not helped prove or disprove if there was a misrepresentation.

11. I do not consider the Methodist Hospital Emergency Ward Charge Nurse, any Executive Management, or the Hospital responsible for allowing the young man to duplicitously enter my room and commit an act that may cause permanent bodily harm. Responsibility for this evil deed should fall on the young man's immediate supervisor first for doing, secondly, if he were instructed by his manager to do this, for not objecting.

12. Ironically, this sordid event happened on the eve of the City of Minneapolis's agreement to and the signing of the Department of Justice consent decree.

13. An observer would think the resources employed far exceed those available to the Minneapolis Police Department at this time.

14. Nurses, doctors, and hospital management are committed to patient care. Most civil servants - lawyers, teachers, Inspectors, and not a few administrators - are committed to faithfully doing their respective duties with empathy and diligence – too often at their supervisors' and managers' will and direction. This is an instance where a young Minneapolis Police Officer, U.S.M.S. Deputy, or someone from some other agency, whatever, was instructed to do something evil by his supervisor.

15. The use of Emergency Ward room A1 instead of assigned room A27 was used in the assault. Room A1 is convenient to a busy door that has access to the Emergency Ward, room A1, and the street entrance to the Emergency Ward.

    The Emergency Ward has a room for law enforcement that was not used.

16. A previous event at the Minneapolis VA hospital indicates the VA may be producing and providing deleterious serums. As noted in "The Memorandum regarding continued sealing, paragraph 5, this is the second injection of a harmful substance into the plaintiff's body. Immediately following pre-surgical bloodwork for a walk-in surgery removal of a cyst, I was sick for two weeks. During the first week I was incapable of leaving my bed. As the blood-draw procedure proceeded, I noted the use of what seemed to me to be a syringe rather than a blood sample tube.

17. Attachment #1 is a damning report based on a pop-psychological test probably not forgotten and replaced by another trendy test. While it was "unethical" to help me deal with women, the writer saw it as not unethical to compose the ruinous prose in

the backside middle paragraph. Insinuations about my mental health have also been repetitive and annoying.

18. I wish to treat this filing as a continuation of Case No. 0:19-cv-03115 in this same Court. My complaints are a repetition and continuation of previous events, some illegal and obnoxious. The only difference between events before filing Case number 0:19-cv-03115 and those after filing this case is an increase in the seriousness of not-so-petty crimes against the plaintiff.

19. As much as or more than vicious rumor and innuendo that I am a pedophile, I have earned contempt for my speaking out about a lack of leadership at the Precinct level. Now U.S.M.S. Minneapolis leadership has brought themselves into scrutiny.

20. Because of the inexplicable experiences, observations, and coincidences, I have spoken out:

> At a community meeting introducing Cedric Alexander Martin Luther King Park, at a presentation given by Martin Olav Sabo at South High School many years ago, and openly in conversation and writing, I have put forward the opinion that the Minneapolis Police problems are not in the Chief's Office.
>
> In thirty-four years, I have seen seven Chiefs come and go, including one who left here to become and still is the Chief in San Antonio, TX. Twenty-one years ago, Bill McManus took interest enough to introduce me to Richard Zimmerman.
>
> I think Major Zimmerman initiated something that has spiraled upward and is out of control. Once in motion, the nature of sexual misconduct has considerable momentum. Officers have failed to consider alternatives and prefer easy conclusions. I have erred but have always tried my best to be a good person. I am not evil.
>
> Attending a community meeting in the 1990s, I observed Jay Hefferen and a council member working on police reform matters. I thought Mr. Hefferen would help me with my emergent Police problems. He did not. I recall a report conducted by the late Mark Myrha and the Greene-Espel law firm.

21. Whoever I met with in the consultation at the Mayo Clinic on November 6, 2024, said the lump on my prostate was not cancer. This is stated in the clinical notes accompanying this motion.

22. With respect to the pedophile allegations: I have never pursued young women and girls or cultivated them for intimacy. This is true for my entire life. Any person who attests otherwise, for whatever reason, is lying. I have never had sexual interests in "Father's daughters". This is true in Minneapolis, Seattle, and San Francisco and all other places I have lived or visited.

23. Attachment 2 is a letter I wrote to Mike Freeman, Former Minnesota State Hennepin County Attorney, and Dan Satterberg, Former Washington State King County Attorney. I was entreating them to help me with Minnesota law enforcement interests and research law enforcement documentation in Washington State.

24. In the 1990s and 2000s, there were confounding sting and decoy operations, some infantile and poorly designed. They were outrageous. Girls flagging you down, uninvitedly getting in your car, quietly soliciting a "date" while waiting to cross the street - these women were not drug addicts. In my estimation, they were women disgusted with themselves for doing what they were doing, or young people having a good time defying acceptable behavior. I suggest that they were compensated for their actions.

25. I have had numerous experiences that could only be described as deliberate demonstrations of power to humiliate and instill a sense of helplessness.

> On Friday, February 7th, I put the documents I had considered having shredded into the solid waste recycling bin. True to form, as has happened before, one easily recognizable draft document was placed in my yard immediately before the last step on the sidewalk where I could find it. They intended to inform me they were watching, and I am helpless against them.

26. "Whoever's" efforts have made having a family and daughter of my own impossible. Law enforcement has not let me live a normal life with their hunger to obtain a cheap arrest. They have caused problems for others, wasted resources, and made my life hardly worth living. For thirty years they have poisoned me less for purposes

of law enforcement and crime prevention, more often for their own entertainment and pride. If I harmed any of them, I am deeply sorry.

27. With those young women and girls I have been friendly with over a long term, I have avoided intimacy or any situation that could lead to intimacy.

To this day, I think of not allowing a kid named Laurie into my house while in Seattle for fear of what might happen. Laurie asked me for help, and I refused. I did not want the inevitable temptation that would accompany her in my house. I had known for some time that I was being watched.

My mind was prepared for what I would have to do if her advances had become more direct, but not for any situation in which she was in distress. Whether or not she was in distress is moot.

28. It would be despicable if Seattle Police Department Vice officers had any role whatsoever in manipulating that 18-year-old woman-child into a situation where she would be so desperate - or so instructed - to approach me in the middle of a busy intersection, in front of what was at that time a Kinko's Copy shop, and say with intensity and seriousness that she needed a place to stay.

29. If records represent anything other than a lack of sexual interest in the young women or girls I have had a sustained acquaintance with, it is a corrupted and falsified deception.

30. Some young, unmarried, or married Police Officers have enjoyed associating with the company I have kept: the modern, jazz, and ballet dance community. I was accepted as part of the group because I did not "hit" on them. I participated in classes and a couple of shows for exercise and appreciation of the art.

31. Just who is mocking and committing not-so-petty crimes against the plaintiff is an open question. There once was a direct connection between the plaintiff's complaints of harassment, intimidation, and gaslighting and the Minneapolis Police. Now the U.S. Marshal Service must be co-perpetrators. I am sorry, I cannot imagine anybody else.

32. Unsettling observations and experiences have occurred as recently as January 31 and February 4. These bold actions may not be crimes; they may be acts of intimidation and admonishments to withdraw from this case.

> Last Friday morning, January 31st, at about 5:00 am, as an Uber driver, it appears I was dispatched to Treasure Island Casino with two sexual predators, one of whom seemed to be their handler. They had little or no money and no interest in gambling.
>
> One of the men had urological problems, and the other said he had been raped. The comportment of both men was reserved, to say the least. The handler had a very good time at the slots.
>
> On Tuesday morning, February 4th, at about 5:15 a.m., I was dispatched to the Egan Outlet Stores near the intersection of Hwy 13 (Sioux Trail) and Hwy 77 (Cedar Avenue) as an Uber driver. At that time of the morning, the stores were closed, and the area was devoid of people.
>
> I have concerns about working alone as an Uber driver. In the short term, there is no alternative. On February 7, I enrolled in a bartender's course.

33. As bizarre as being of having been designated a pedophile, being struck by a car in a crosswalk walking home after a visit to the Methodist Hospital about this case is such and exceptional coincidence, I cannot help but wonder about an attempt to silence. I was one-half step from serious injury.

34. The sabotage done to HVAC & R equipment the plaintiff has worked is described in terms a layman could understand below:

> On the eighth day of employment with the Pilot Company, Knoxville, TN, I immediately recognized the sabotage of a rooftop heating-cooling package unit I was assigned to repair. Appropriately, I called the manufacturer's technical support team for guidance and verification of sabotage. With the help of the expert, wires that had been switched around on an inducer fan control board were restored to their proper terminals. This is not typical repair work.

When the unit still did not start, it was obvious that it had been disabled remotely by the Building Management System. This caused a failure to repair and job loss. Cold, disgusted, and tired, and it was night, I went home. In the morning, I was summarily and involuntarily terminated under false pretenses.

This is not the only undeniably sabotage event I suffered. I quit operating Bruce Arnold Mechanical because of sabotage.

35. As unbelievable as it may seem, burglaries of the plaintiff's residences have occurred.

Only documents relating to this litigation, some consumable repair materials, and possibly gaseous chemicals under pressure used in the service and repair of refrigeration equipment were released. Except for one recent theft, the intent appears to have been to handicap, not steal. As I have expressed before, the fear is not what they have taken, the fear is what they might have left.

I, a rental property owner, have not always rekeyed the lock cylinders when tenants leave. Instead, I have occasionally only transferred the deadbolts between doors and properties. Former tenants must have surrendered keys – on request, of course – to the burglar's enabler.

36. I would love to just disappear and be forgotten. Unfortunately, in this age of internet communications and databases, it is not that simple. Earning contempt by law enforcement is more formidable than ever before.

37. If the case is dismissed, I hope to have been heard. I would prefer the dismissal to be without prejudice.

38. If this case goes to Court, I will do my best to prove my assertions based on the evidence I can produce. Limited resources will be a severe handicap. Being alleged to be a pedophile is a poison.

39. In the last 34 years, I have marginally overcome adversity. I have made many mistakes and errors, but my conscious about hurting others is clear with

qualification. I wish I could make amends to the third parties pulled into this deception for the loss, or absence of gain, they may have been caused.

Signed: Bruce A. Lundeen Date: 2/10/2025

Bruce A. Lundeen